IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00838-REB-MEH

JIMMY MARTINEZ, and
LISA MARTINEZ,

      Plaintiffs,

v.

LIBERTY INSURANCE CORPORATION,

      Defendant.

---

## ORDER ON MOTION TO QUASH

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is Plaintiffs' Motion to Quash or Modify Subpoena Duces Tecum Issued by Defendant to Non-Party Matrix Business Consulting, Inc. [filed August 18, 2015; docket #32]. The matter is fully briefed and has been referred to this Court for disposition. Oral argument would not materially assist the Court in adjudicating the motion. For the reasons that follow, the Court grants in part and denies in part the motion to quash as set forth herein.

## I.      Background

      Plaintiffs initiated this action on March 16, 2015 in Douglas County District Court; the action was then removed to this Court on April 21, 2015. Plaintiffs claim Defendant improperly denied their claim for insurance benefits following the destruction of their home and loss of personal property in October 2012 by virtue of a natural gas explosion. Defendant answered denying Plaintiffs' allegations and asserting 11 affirmative defenses, including, as relevant here, "Plaintiffs' claims may be barred, in whole or in part, because Plaintiffs are not the real party in interest. On

October 26, 2012, Defendant received a Notice of Representation from their public adjuster,

advising that it 'has been retained and employed to measure and document the following loss of the

Insured under this Policy. You are hereby authorized and directed to recognize Matrix Business

Consulting, Inc. as a party in interest.'" Answer, docket #12 at 17.

In or about August 2015, Defendant served on Matrix Business Consulting, Inc. ("Matrix")

a subpoena duces tecum seeking production of the following on or before August 18, 2015:

> **Your entire file(s) regarding the real properties located** at 6942 Sulfur Lane,
> Colorado 80108 and/or 6509 Marble Lane, Castle Rock, Colorado 80108 and the
> claim(s) submitted by Jimmy Martinez and Lisa Martinez (collectively, "Plaintiffs")
> in connection with the October 12, 2012 natural gas explosion ("Incident")
> including, but not limited to: any documents prepared by Matrix Business
> Consulting, Inc. and any of its employees or representatives in connection with the
> Incident; any contract(s) entered into by, between or among Matrix Business
> Consulting, Inc. and its employees and representatives and Plaintiffs in connection
> with the Incident; any and all inventories or other lists created in connection with the
> Incident; any and all communications by, between and among Matrix Business
> Consulting Inc. and its employees and representatives and Plaintiffs, Liberty Mutual
> Insurance Company, Liberty Insurance Corporation and any other non-parties in
> connection with the Incident; any and all photographs taken in connection with the
> Incident; any and all documentation supporting the proof of purchase (including, but
> not limited to, receipts, invoices, bills, cancelled checks) for any items identified on
> any inventories or lists that were prepared in connection with the Incident; and any
> and all communications (including letters and emails) between Matrix Consulting,
> Inc. and its employees and representatives and Plaintiffs and/or their counsel.

Subpoena to Produce Documents, docket #35-1.

In the present motion, Plaintiffs request an order quashing or modifying the subpoena

arguing that certain documents Defendant seeks contain attorney-client privileged communications

and/or protected work product.  Plaintiffs retained Matrix, a public adjusting firm, to assist them in

submitting an insurance claim to Defendant after the destruction of their house.  Eventually,

Plaintiffs also retained an attorney, Thomas Henderson, Esq., to further assist them, along with

Matrix, with their claim.  Plaintiffs contend that the Matrix "file" contains certain written

2

communications among the Plaintiffs, Henderson, and Matrix that are protected from disclosure.

Defendant counters that, during the claims process, Matrix, on behalf of the Plaintiffs, submitted a "first inventory" list of personal items that were destroyed in the explosion in the amount of $107,450.86; Defendant submitted a payment to the Plaintiffs for this inventory. Then, six months after the incident, Matrix submitted a second inventory list seeking reimbursement for destroyed "weapons and survival items" in the amount of $280,000; however, because Defendant was unable to confirm the claim after an investigation, Defendant did not pay benefits. Defendant contends any attorney-client privilege held by Plaintiffs was waived because Matrix is a third party; Plaintiffs' application of the "common interest doctrine" is misplaced; and the work product doctrine does not apply because the Plaintiffs and Matrix did not anticipate litigation in 2013, two years before the action was filed.

Plaintiffs reply that Defendant ignores prevailing cases supporting (1) an exception to waiver of the privilege by disclosure to third parties, and (2) the Plaintiffs' application of the common interest doctrine to determine whether the privilege attaches, and  the application of the work-product doctrine to protect documents in the Matrix file from disclosure.

## II.    Legal Standards

Initially, the Court must determine whether Plaintiffs have standing to file a motion to quash the challenged subpoena. The general rule is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege or upon a showing that there is a privacy interest applicable. *Windsor v. Martindale,* 175 F.R.D. 665, 668 (D. Colo. 1997) ("[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum"); *see also Broadcort Capital Corp. v. Flagler Secs., Inc.*, 149 F.R.D. 626 (D. Colo. 1993). Objections

unrelated to a claim of privilege or privacy interest are not proper bases upon which a party may quash a subpoena. *Windsor*, 175 F.R.D. at 668; *see also Oliver B. Cannon & Son, Inc. v. Fidelity & Cas. Co. of New York*, 519 F. Supp. 668, 680 (D.C. Del. 1981) (movant lacks standing to raise objections unrelated to any right of privilege).  Here, the Defendant does not challenge Plaintiffs' standing to seek protection from the subpoena based on the attorney-client privilege and work product doctrine, and the Court finds the Plaintiffs have made the requisite showing to demonstrate they have standing to move to quash Defendant's subpoena.

Fed. R. Civ. P. 45(d)(3)(A) requires the Court to quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires excessive travel by a non-party; (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.  Plaintiffs rely on subsection (iii) of the applicable rule.

In diversity jurisdiction cases such as this one, state law controls the issues of privilege raised by the parties.  *See* Fed. R. Evid. 501; *see also Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 699 (1998).  In Colorado, the attorney-client privilege is "established by the act of a client seeking professional advice from a lawyer and extends only to confidential matters communicated by or to the client in the course of gaining counsel, advice, or direction with respect to the client's rights or obligations."  *People v. Tucker*, 232 P.3d 194, 198 (Colo. App. 2009) (citing *Losavio v. Dist. Court in and for Tenth Judicial Dist.*, 533 P.2d 32, 35 (Colo. 1975)); *see also People v. Trujillo*, 144 P.3d 539, 542 (Colo. 2006) ("the attorney-client privilege applies to confidential matters communicated by or to the client in the course of obtaining counsel, advice, or direction with respect to the client's rights or obligations").  The privilege applies only to communications under circumstances giving rise to a reasonable expectation that the communications will be treated as

4

confidential. *Tucker*, 232 P.3d at 198 (citing *Wesp v. Everson*, 33 P.3d 191, 197 (Colo. 2001)).

Mere statements of fact are not protected by the attorney-client privilege. *Trujillo*, 144 P.3d at 545

(citing *Gordon v. Boyles*, 9 P.3d 1106, 1123 (Colo. 2000) (noting that "the privilege protects only

the communications to the attorney; it does not protect any underlying and otherwise unprivileged

facts that are incorporated into a client's communication to his attorney")).   "The burden of

establishing the applicability of the attorney-client privilege rests with the claimant of the privilege."

*Black v. Sw. Water Conservation Dist.*, 74 P.3d 462, 467 (Colo. App. 2003) (citing *Clark v. District

Court*, 668 P.2d 3, 8 (Colo. 1983)); *see also In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).

"Unlike the attorney client privilege, the work product privilege is governed, even in

diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)." *Frontier

Refining Inc.*, 136 F.3d at 702 n. 10 (internal quotation omitted).  To be subject to the work product

doctrine the materials must have been "prepared in anticipation of litigation.  It does not protect

materials prepared in the 'ordinary course of business.'" *Weitzman v. Blazing Pedals, Inc.*, 151

F.R.D. 125, 126 (D. Colo. 1993) (citation omitted).  Thus, to receive work product protection, the

party resisting discovery must demonstrate that the information at issue "was prepared by the

attorney in anticipation of litigation or for trial."  *In re Grand Jury Proceedings*, 616 F.3d 1172,

1184-85 (10th Cir. 2010); *see also Pepsico, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817

(8th Cir. 2002) (stating that "[i]n order to protect work product, the party seeking protection must

show the materials were prepared in anticipation of litigation, i.e., because of the *prospect* of

litigation") (emphasis added).

The court in *Martin v. Monfort, Inc.*, 150 F.R.D. 172 (D. Colo. 1993), set forth a process to

be considered in determining a claim for work product protection:

Rule 26(b)(3) ... contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work product, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

*Id.* at 172-73 (internal citations omitted).

## III.   Analysis

Plaintiffs argue that certain documents sought in the subpoena are protected by the attorney-client privilege or, in the alternative, by the work product doctrine. Thus, the Court will begin by analyzing whether the attorney-client privilege attaches.

### A.   Attorney-Client Privilege

It is undisputed that the written communications/information the Plaintiffs seek to protect involve a third party, Matrix. "A client impliedly waives the attorney-client privilege by placing privileged communications or material at issue or by disclosing the privileged information to a third party." *Martensen v. Koch*, 301 F.R.D. 562, 573 (D. Colo. 2014) (citing *People v. Sickich*, 935 P.2d 70, 73 (Colo. App. 1996)).

Plaintiffs contend that, because Matrix was their "agent" or "representative," their privilege was not waived when communications with counsel were disclosed to Matrix. Plaintiffs cite primarily to two cases in support of this proposition; however, those cases interpret *federal* as

6

opposed to *state* common law concerning the attorney-client privilege.  *See Roe v.Catholic Health Initiatives Colo.*, 281 F.R.D. 632 (D. Colo. 2012) *and Weatherford v. Bursey*, 429 U.S. 545 (1977). A review of Colorado case law reveals that courts have found the privilege attaches to corporations and that, because corporations must act through agents, the privilege is not waived when communications occur between the lawyer and corporate agents.  *See Genova v. Longs Peak Emergency Physicians, P.C.*, 72 P.3d 454, 462 (Colo. App. 2003).  But, the Court found no cases in Colorado standing for the proposition that a representative or agent of an individual client is not a "third party" for purposes of determining whether the privilege is waived.

However, in Colorado, the common interest doctrine is an exception to the general rule that one who discloses confidential material to a third party waives the attorney-client privilege.  *Black*, 74 P.3d at 469.  "Communications shared with third persons who have a common legal interest with respect to the subject matter thereof will be deemed neither a breach nor a waiver of the confidentiality surrounding the attorney-client relationship."  *Id.*; *see also Ritter v. Jones*, 207 P.3d 954, 960 (Colo. App. 2009) (same). The common interest doctrine applies even when there is no pending litigation and includes information shared during a common enterprise.  *Ritter*, 207 P.3d 954 at 960.  "Accordingly, when a party invokes the common interest privilege, the court must focus on the circumstances surrounding the disclosure of the communications or documents rather than on when the communications or documents were generated."  *Black*, 74 P.3d at 469.  Importantly, the privilege applies only to communications given in confidence and intended, and reasonably believed, to be part of an ongoing and joint effort to set up a common legal strategy.  *Id.*

In *Black*, the Colorado Court of Appeals affirmed the trial court's finding that a common legal interest existed among certain proponents (including the defendant) of a project initiated to

provide water to Indian tribes, businesses, and farms when the proponents entered into an "agreement in principle" to share costs for the project, which entitled the proponents to exchange documents without waiving the attorney-client privilege. *Id.* at 469-70. In *Ritter*, the court, analyzing a work product defense, found that a common legal interest existed between a state representative and a labor union's assistant general counsel where the representative provided draft legislation to implement a state employee partnership system to the general counsel for review and comment. *Ritter*, 207 P.3d at 961.

With these legal principles in mind and absent evidence to the contrary, the Court finds that, by the Plaintiffs' retention of Mr. Henderson and Matrix to assist them in securing insurance benefits from Defendant, the Plaintiffs, their attorney, and Matrix engaged in a common legal interest under Colorado law. However, the Plaintiffs designated Matrix as a witness and concede that Matrix's file contains both privileged and non-privileged documents. Motion, docket # 32 at 6 n.6. Therefore, the Court will not quash the subpoena in its entirety, but will order the Plaintiffs to provide the Court copies of the documents they believe to be subject to the attorney-client privilege for review *in camera*; the Court then will determine whether the documents may be produced to the Defendant.

B.     Work Product Doctrine

In the alternative, Plaintiffs contend Matrix's file contains documents/information protected by the work product doctrine. The Court disagrees.

The Court finds persuasive those cases analyzing whether documents were created "in anticipation of litigation" or, actually, simply "in the course of ordinary business." For example, "[b]ecause a substantial part of an insurance company's business is to investigate claims made by an insured against the company ..., it must be presumed that such investigations are part of the

normal business activity of the company and that reports and witness' statements compiled by or on behalf of the insurer in the course of such investigations are ordinary business records as distinguished from trial preparation materials." *Stillwell v. Exec. Fund Life Ins. Co.,* No. 89-A-245, 1989 WL 78159, at *3 (D. Colo. July 12, 1989) (quoting *Hawkins v. Dist. Court,* 638 P.2d 1372, 1378 (Colo. 1982)); *see also St. Paul Reinsurance Co. v. Comm'l Fin. Corp.*, 197 F.R.D. 620, 636 (N.D. Iowa 2000) ("An insurer cannot shield its entire claims investigation behind the work product privilege simply by hiring an attorney to perform what is in the ordinary course of the insurer's business.").

Likewise, if a company, which generates documents in the ordinary course of business, contends that such documents contain protected work product, the company has the burden of demonstrating that the documents were "'prepared or obtained in order to defend the specific claim which already had arisen and, when the documents were prepared or obtained, there was a substantial probability of imminent litigation over the claim, or a lawsuit had already been filed.'" *See Stillwell*, 1989 WL 78159, at *3 (quoting *Hawkins*, 638 P.2d at 1379). "Determining whether anticipated litigation is the driving force behind the preparation of each requested document is the central inquiry in resolving work product questions." *Smith v. Marten Transp., Ltd.*, No. 10-cv-00293-WYD-KMT, 2010 WL 5313537, at *3 (D. Colo. Dec. 17, 2010) (quoting *Wikel v. Wal-Mart Stores, Inc.*, 197 F.R.D. 493, 495 (N.D. Okla. 2000)).

Plaintiffs contend that "because [Defendant]'s request for the [Plaintiffs] to sit for [examinations under oath] placed the parties at odds and required both [Defendant] and the [Plaintiffs] to hire attorneys, it is clear that by this point litigation was likely imminent and any related communications were created in anticipation of the current litigation." Reply, docket #39

at 10.  The Court is not persuaded.  The insurance policy at issue in this case clearly permits Defendant to require its insureds to "[s]ubmit to examination under oath, while not in the presence of any other 'insured,' and sign the same" during the course of its investigation of a claim.  Liberty Homeowners Policy, § I.2.f(3), docket #38-8 at 3.  As set forth above, the fact that an attorney conducted the examinations does not necessarily convert ordinary business to litigation preparation. *St. Paul Reinsurance Co.*, 197 F.R.D. at 636.  Moreover, these examinations took place two years before the current action was filed; there is no indication nor argument from the Plaintiffs that they were anticipating filing this action in 2013.  Nor do the Plaintiffs argue that protected documents exist in the Matrix file any time after the January 2014 denial of their claim.  Accordingly, the Court finds that the work product doctrine does not apply to documents prepared by, for, or with Matrix in 2012-2013.

## III.    Conclusion

Plaintiffs concede that some documents in Matrix's file are discoverable, and they have failed to demonstrate the documents are protected by the work product doctrine; consequently, the Court will deny Plaintiffs' request for an order quashing the subpoena in its entirety.  However, Plaintiffs are correct that the attorney-client privilege may attach to certain documents they seek to withhold; thus, the Court will grant in part the Plaintiffs' request to modify the subpoena as follows: Matrix, through Plaintiffs, shall submit to the Court *in camera* only those documents the Plaintiffs believe are protected by the privilege; the Court will then determine whether the documents should be withheld or produced to Defendant.

Therefore, for the reasons stated above, it is ORDERED that Plaintiffs' Motion to Quash or Modify Subpoena Duces Tecum Issued by Defendant to Non-Party Matrix Business Consulting, Inc.

[filed August 18, 2015; docket #32] is **granted in part** and **denied in part**.  Matrix, through the Plaintiffs, shall produce to Defendant all documents requested in the subpoena that the Plaintiffs believe are not subject to the attorney-client privilege, and submit to the Court all "privileged" documents for *in camera* review **on or before October 19, 2015**.

Dated at Denver, Colorado, this 9th day of October, 2015.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge

11